# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### September 20, 2022 Session

## TIMOTHY CHARLES COOKE v. RITA MOSES COOKE

**Appeal from the Circuit Court for Hamilton County**
**No. 19-D-2028          L. Marie Williams, Judge**

_____

## No. E2022-00049-COA-R3-CV
_____


This appeal involves an amended final decree of divorce entered by the Circuit Court of Hamilton County ("trial court") on December 20, 2021. Following a bench trial, the trial court granted the parties a divorce pursuant to Tennessee Code Annotated § 36-4-129(b), divided the parties' marital assets and liabilities, and awarded transitional alimony to the wife in the amount of $1,200.00 per month for two months. Both parties subsequently filed motions to alter or amend the court's ruling. The trial court entered an amended final decree, incorporating by reference a memorandum opinion wherein the court altered the percentages awarded to each party of certain items of marital property in its marital property distribution. The wife timely appealed. Following review, we affirm the trial court's determinations concerning valuation and classification of the parties' assets. We vacate, however, the portion of the trial court's amended decree wherein the court altered the percentages awarded to each party, and we remand this issue to the trial court for further findings, explanation, and determination. By reason of this unresolved issue concerning the trial court's marital property distribution, we likewise vacate and remand the trial court's determinations regarding alimony and attorney's fees for reconsideration following the court's equitable division of marital property. The trial court's amended final decree is affirmed in all other respects. The parties' respective requests for attorney's fees on appeal are denied.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
### Affirmed in Part, Vacated in Part; Case Remanded

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and KRISTI M. DAVIS, J., joined.

Chrissy Mincy, Chattanooga, Tennessee, for the appellant, Rita Moses Cooke.

Catherine M. White, Chattanooga, Tennessee, for the appellee, Timothy Charles Cooke.

**OPINION**

## I. Factual and Procedural Background

Timothy Charles Cooke ("Husband") filed a complaint for divorce in the trial court on November 15, 2019. As grounds for divorce, Husband alleged irreconcilable differences or, in the alternative, that the defendant, Rita Moses Cooke ("Wife"), was guilty of inappropriate marital conduct. Husband also sought a temporary restraining order against Wife based on her alleged "fits of rage, threats, and verbal abuse" toward him. Husband further sought temporary, exclusive possession of the parties' marital residence, requesting that the court order Wife and her adult daughter (from a prior marriage) to vacate the premises. That same day, the trial court entered a temporary restraining order and awarded Husband exclusive possession of the marital residence. In response, Wife requested a hearing concerning the merits of the court's temporary orders. Following motions filed by Husband seeking to continue the hearing and engage in mediation, Wife filed a motion on December 5, 2019, requesting that the court vacate the temporary orders or hold an immediate hearing. Wife also filed a motion on December 23, 2019, seeking an award of temporary spousal support pending trial.

On March 17, 2020, the trial court entered an order vacating its previously entered temporary restraining order. The court stated that Husband had testified during a hearing conducted on December 16, 2019, and had failed to meet his burden of proof. The court further ordered that the parties would share possession of the marital residence pending future orders.

On March 23, 2020, the trial court entered an agreed order of reconciliation, stating that the parties had agreed to suspend the divorce proceedings. However, on May 19, 2020, Husband filed a motion seeking to have the order of reconciliation set aside, and the divorce proceedings were reinstated. Husband concomitantly filed a motion seeking permission to place the marital residence on the market, asserting that he was at risk of losing his job due to "the economic depression caused by COVID-19." On June 10, 2020, Wife filed a motion seeking exclusive possession of the marital residence and entry of a mutual restraining order, referencing Husband's "intimidating, harassing, and abusive" behavior.

On July 13, 2020, Wife filed an answer and counter-complaint for divorce, averring that Husband had committed adultery and was guilty of inappropriate marital conduct. In the alternative, Wife also requested a divorce on the ground of irreconcilable differences. Following the filing of income and expense statements, proposed property distribution worksheets, and other documents by the parties in preparation for trial, on January 6, 2021, Husband filed a motion seeking an award of alimony pending trial, claiming that he had lost his job and could not continue to pay all of the expenses related

to upkeep of the marital residence. Husband also filed a second motion seeking permission to place the marital residence on the market.

The trial court conducted a bench trial over the course of three days: January 20, 2021; February 25, 2021; and March 16, 2021. The court subsequently entered an order directing the parties to file proposed findings of fact and conclusions of law. In turn, both parties subsequently filed proposed findings and conclusions. In the meantime, Wife also filed a motion to enforce the statutory injunction and to enjoin Husband from disrupting utility services at the marital residence. The court entered an order granting such an injunction on April 26, 2021.

The trial court entered a lengthy memorandum opinion on July 7, 2021 ("July Opinion"), containing the court's findings of fact and conclusions of law. In its memorandum opinion, the trial court found, *inter alia*, that the parties had been married for seven years by the time of the final hearing and had no children together. The court further found that Wife was fifty-two years of age and Husband was sixty-three.

The trial court noted that Husband was in an "enviable economic position" going into and during the marriage, earning $236,000.00 to $275,000.00 per year from his job with IBM. Husband also maintained significant premarital assets. As agreed upon by the parties, Wife was primarily a stay-at-home mother[1] throughout their marriage and also cared for her parents following their respective cancer diagnoses. During the marriage, the parties enjoyed a comfortable standard of living with a typical monthly budget of $10,000.00.

According to the trial court, Wife sustained injuries in a motorcycle accident in 2011, including a crushed shoulder and knee, that continued to impact her physical abilities. Although Wife worked intermittently during the marriage at various jobs, she had recently obtained employment earning $8,010.94 per month and providing her with health insurance. Husband had thirty years' experience in business sales, held a license as a professional counselor, and was enrolled at Lee University seeking to obtain a Ph.D. in marriage and family therapy. Husband had been treated by Dr. Trevor Milliron since May 2020, and Dr. Milliron had diagnosed Husband with generalized anxiety disorder. Husband was terminated from IBM in February 2021 and obtained severance pay and short-term disability benefits. According to the trial court, Husband stated that he would receive income of $3,212.49 per month from his pension and that he also drew income from his investments.

The trial court noted that although each party held a different view of the cause of the marriage's demise, the marital issues were characterized by lack of communication. The court found Husband to be a person who "articulates his position with fervor and

---

[1] Wife's daughter was thirteen years of age at the time of the parties' marriage.

detail." The court described Wife as "unable to be heard when she attempted to respond to the plans and dictates imposed" by Husband. The court further determined that Husband expressed his frustration with "yelling and other aggressive articulations." According to the court's findings, the couple "appeared to have a happy marriage until [Wife] became less compliant with the verbal control of [Husband]," who "sees things from his viewpoint alone and does not accept the perspective of others."

Based on "observing the demeanor of" and "listening to the testimony of" the parties, the trial court discerned Wife's credibility to be substantially greater than Husband's. The court also found "the experts [Stelzman][2] and Milliron to be truthful in their testimony" while acknowledging that Dr. Milliron's opinion was predicated solely on Husband's self-reporting during a time when Husband was attempting to obtain disability benefits, to retire, and "was in a contentious divorce." The court therefore discounted Dr. Milliron's opinion on that basis.

The trial court found that the marital residence was purchased during the marriage and titled in both parties' names, rendering it a marital asset. As such, the trial court determined that separate funds invested in the marital residence, such as $110,000.00 that Husband had inherited from his uncle, had been commingled and/or transmuted into marital property. The court also found that funds Husband had removed from the parties' joint account and placed into a separate account with SunTrust just prior to filing for divorce were marital, as were Husband's severance pay and disability benefits deposited therein. Accordingly, the court found that Husband's separate SunTrust account had a balance of $84,750.01 that was subject to equitable division.

The trial court also found that the appreciation during the marriage in Husband's 401(k) account, which was actively managed by the parties and had recently been converted to a Pacific Life Annuity, was marital, although the premarital amount of $741,947.00 was separate. The court likewise found that Wife's First Horizon account, both parties' vehicles, and both parties' credit card liabilities were marital. The trial court ordered the marital residence sold and the proceeds divided sixty percent to Husband and forty percent to Wife. The court distributed the remaining marital assets and liabilities between the parties and awarded to Wife transitional alimony of $1,200.00 per month for two months. The court entered a final decree of divorce on August 16, 2021, incorporating its July Opinion.

Following the filing of motions to alter or amend by both parties, the trial court entered a memorandum opinion concerning those motions on September 30, 2021 ("September Opinion"). An amended final decree of divorce was subsequently entered by the court on December 20, 2021. In the amended final decree, the court ordered that

---

[2] According to the trial transcript, Matthew Stelzman, a certified valuation analyst, testified as an expert witness concerning the value of certain assets.

- 4 -

the marital residence be listed on the market for a price of $775,000.00. Although the trial court previously had awarded sixty percent of the proceeds from the sale of the marital residence to Husband and forty percent to Wife in its July Opinion, the trial court amended that award to provide for seventy percent of the proceeds to Husband and thirty percent to Wife.

Similarly, although the trial court had originally awarded to Husband sixty percent of the marital portion of the Pacific Life Annuity and sixty percent of his SunTrust account, the trial court amended this award to provide Husband seventy percent of both assets and Wife thirty percent of those assets. The trial court reaffirmed its earlier award of transitional alimony to Wife. Wife timely appealed.

## II. Issues Presented

Wife presents the following issues for this Court's review, which we have restated slightly:

1. Whether the trial court abused its discretion by amending the classification of the increase in value held in the Pacific Life Annuity.

2. Whether the trial court erred in finding that the appreciation in the Pacific Life Annuity value was market driven.

3. Whether the trial court abused its discretion in reducing Wife's portion of the equitable division of the marital estate.

4. Whether the trial court abused its discretion in the amount and duration of the alimony award to Wife.

5. Whether the trial court abused its discretion by declining to award to Wife her reasonable attorney's fees.

6. Whether Wife is entitled to her reasonable attorney's fees on appeal.

Husband presents the following additional issues for the Court's review:

7. Whether the trial court abused its discretion in declining to award Husband $351,709.00 "off the top" of the sales proceeds from the marital residence or alternatively 97.7% of the proceeds from the sale of the marital residence.

8. Whether the trial court abused its discretion in finding that $70,463.00 of Husband's inheritance was transmuted and therefore not his separate property.

9. Whether the trial court abused its discretion in declining to award $70,463.00 of Husband's inheritance to him notwithstanding transmutation.

10. Whether Husband is entitled to his reasonable attorney's fees on appeal.

## III. Standard of Review

Related to awards of spousal support, our Supreme Court has "repeatedly . . . observ[ed] that trial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). The High Court has further explained:

[A] trial court's decision regarding spousal support is factually driven and involves the careful balancing of many factors. *Kinard v. Kinard*, 986 S.W.2d 220, 235 (Tenn. Ct. App. 1998); *see also Burlew* [*v. Burlew*], 40 S.W.3d [465,] 470 [(Tenn. 2004)]; *Robertson v. Robertson*, 76 S.W.3d 337, 340-41 (Tenn. 2002). As a result, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision." *Kinard*, 986 S.W.2d at 234. Rather, "[t]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006). Appellate courts decline to second-guess a trial court's decision absent an abuse of discretion. *Robertson*, 76 S.W.3d at 343. An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010). This standard does not permit an appellate court to substitute its judgment for that of the trial court, but "'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.'" *Henderson*, 318 S.W.3d at 335 (quoting *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)). Consequently, when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that

the decision is correct and should review the evidence in the light most favorable to the decision. *Wright*, 337 S.W.3d at 176; *Henderson*, 318 S.W.3d at 335.

*Id.* at 105-06 (footnotes omitted).

We also review a trial court's award of attorney's fees according to an abuse of discretion standard. *See Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *In re Estate of Greenamyre*, 219 S.W.3d 877, 886 (Tenn. Ct. App. 2005) ("[A] trial court will be found to have 'abused its discretion' only when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party.") (internal citations omitted)).

With respect to a trial court's classification, valuation, and distribution of parties' assets, this Court has elucidated:

> Dividing a marital estate necessarily begins with the classification of the property as either separate or marital property. The definitions of "separate property" and "marital property" in Tenn. Code Ann. § 36-4-121(b) (1996) provide the ground rules for the task. Once the property has been classified, the trial judge's goal is to divide the marital property in an essentially equitable manner. A division is not rendered inequitable simply because it is not precisely equal, *see Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn. 1996); *Ellis v. Ellis*, 748 S.W.2d 424, 427 (Tenn. 1988), or because each party did not receive a share of every piece of marital property. *See Brown v. Brown*, 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994).

> Dividing a marital estate is not a mechanical process but rather is guided by considering the factors in Tenn. Code Ann. § 36-4-121(c). Trial judges have wide latitude in fashioning an equitable division of marital property, *see Fisher v. Fisher*, 648 S.W.2d 244, 246 (Tenn. 1983); *Brown v. Brown*, 913 S.W.2d at 168, and appellate courts accord great weight to a trial judge's division of marital property. *See Wilson v. Moore*, 929 S.W.2d 367, 372 (Tenn. Ct. App. 1996); *Edwards v. Edwards*, 501 S.W.2d 283, 288 (Tenn. Ct. App. 1973). Thus, we will ordinarily defer to the trial judge's decision unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence.

> * * *

> The valuation of a marital asset is a question of fact. It is determined by considering all relevant evidence, and each party bears the burden of

bringing forth competent evidence. *See Wallace v. Wallace*, 733 S.W.2d 102, 107 (Tenn. Ct. App. 1987). If the evidence of value is conflicting, the trial judge may assign a value that is within the range of values supported by the evidence. *See Ray v. Ray*, 916 S.W.2d 469, 470 (Tenn. Ct. App. 1995); *Wallace v. Wallace*, 733 S.W.2d at 107. On appeal, we presume the trial judge's factual determinations are correct unless the evidence preponderates against them. *See Jahn v. Jahn*, 932 S.W.2d 939, 941 (Tenn. Ct. App. 1996).

*Kinard v. Kinard*, 986 S.W.2d 220, 231 (Tenn. Ct. App. 1998) (other internal citations omitted).

### IV. Amendment of July Opinion and Initial Final Decree

Wife's first three issues on appeal concern the trial court's amendments to its July Opinion and initial final decree respecting the increase in value of the Pacific Life Annuity ("the Annuity"), which contained funds originally held in Husband's 401(k), as well as the court's classification and distribution of the parties' assets. Specifically, with regard to the Annuity, Wife questions whether the court abused its discretion by "attempting to amend the classification of the increase in value" of this asset and by determining that the appreciation in this asset was market driven. Wife also urges that the court abused its discretion in reducing Wife's portion of certain marital assets in the amended final decree.

As the trial court explained generally in its July Opinion:

The account balance or value of vested and unvested pension benefits and retirement benefits accrued as a result of employment prior to the marriage, together with the appreciation of that value, are designated as separate property by the applicable statute. The Court is to utilize a reasonable method of accounting to attribute post-marital appreciation to the value of pre-marital benefits even though contributions have been made to the account during the marriage and even though the contributions appreciated in value during the marriage but those contributions and the appreciation of those contributions are marital. The concept of commingling and transmutation do not apply to these benefits when the Court is determining the appreciation.

*See* Tenn. Code Ann. § 36-4-121(b)(2)(B)(iii). Specifically concerning the Annuity, the trial court stated:

The husband's 401k appreciated during the marriage as a result of the active management of the parties during the marriage. The appreciation

is marital. It was actively managed by both parties. It was converted to the Pacific Life Annuity after wife met with a financial advisor at the request of husband. The invested amount of $741,947.00 is separate property but the appreciation is marital.

In the attached chart delineating its division of marital assets, the court placed a value of $84,601.00 on the marital portion of the annuity, awarding sixty percent of that amount, or $50,760.60, to Husband and forty percent, or $33,840.40, to Wife. The court awarded to Husband as separate property the "Pre-Marital Interest" in the Annuity without assigning a value thereto.

In her subsequent motion to alter or amend, Wife argued that $84,601.00 represented solely the monetary value of contributions to the Annuity that were made during the marriage and did not include any appreciation in the Annuity's value that occurred during the marriage, indicating that the total value of the Annuity at the time of the final hearing was $1,423,539.00. Wife posited that because the trial court had determined that appreciation in the Annuity's value occurring during the marriage was a marital asset, the amount to be divided would actually be $681,585.00.

In its September Opinion addressing the motions to alter or amend, the trial court clarified that "the active management of the account in which the wife participated was her meeting with the investment advisor and her participation and concurrence in the conversion of the 401k to the Pacific Life Annuity. Aside from that decision, all appreciation in the Pacific Life Annuity is market-driven." The court further stated:

> Pursuant to T.C.A. § 36-4-121(b)(1)(B)(iii), the Court is to use "any reasonable method of accounting" to attribute post-marital appreciation to the value of the pre-marital benefits and segregate those from the contributions made during the marriage. This analysis was provided by the testimony of Matthew Stelzman who established the contributions made during the marriage which were not attributable to appreciation were $84,601.00. Accordingly, the Court declines to alter or amend its findings concerning the portion of the Pacific Life Annuity that is separate property and what is marital property.

Wife argues that the trial court "amended" its classification concerning the value of appreciation of the Annuity during the marriage by appearing to initially find that all appreciation in value of the Annuity during the marriage was a marital asset and later finding that only contributions made to the Annuity during the marriage constituted a marital asset. Upon our review of the trial court's written orders, however, we disagree with Wife's contention.

We recognize that the trial court's July Opinion creates some confusion regarding this issue. The court's findings specific to the Annuity seem to suggest that the court was classifying <u>all</u> appreciation in value of this asset that occurred during the marriage as a marital asset. ("The husband's 401k appreciated during the marriage as a result of the active management of the parties during the marriage. The appreciation is marital.") However, the court correctly stated earlier in that same opinion that the "account balance or value of vested and unvested pension benefits and retirement benefits accrued as a result of employment prior to the marriage, together with the appreciation of that value, are designated as separate property by the applicable statute" and that "contributions [made during the marriage] and the appreciation of those contributions are marital." *See* Tenn. Code Ann. § 36-4-121(b)(2)(B)(iii). Accordingly, the trial court's distribution of assets only divided $84,601.00 as the marital portion of the Annuity.

Importantly, we note that the valuation expert, Mr. Stelzman, stated that he had performed asset tracing and valuation services for Husband relative to the litigation. Mr. Stelzman reported that the value of Husband's 401(k) at the time of the parties' marriage was $741,974.00 and that by the time the asset was converted to the Annuity in 2018, it was worth $1,411,000.00. Based upon his calculations, Mr. Stelzman opined that $84,601.00 represented the value of contributions made to this asset during the marriage and any appreciation attributable solely to those marital contributions. Mr. Stelzman implied that any remaining increase in the value of this asset would be attributable to appreciation in value of the premarital balance over time. As such, by adopting Mr. Stelzman's valuation of $84,601.00 as the marital portion of this asset, it appears that the court followed the dictates of Tennessee Code Annotated § 36-4-121(b)(2)(B)(iii) concerning the marital and separate portions of the Annuity.

Accordingly, in its September Opinion regarding the motions to alter or amend, the trial court reaffirmed its classification of the marital and separate portions of this asset, specifically crediting the testimony of Mr. Stelzman, and "decline[d] to alter or amend its findings concerning the portion of the Pacific Life Annuity that is separate property and what is marital property." The court therefore continued to classify the amount of $84,601.00 as the marital portion of the asset. As such, we determine Wife's argument concerning the court's "attempts to amend the classification" of the appreciation in the Annuity to be unavailing. Although there does appear to be some disparity between the factual findings contained in the July Opinion and the findings contained in the September Opinion, the trial court's ultimate determination concerning the value of the marital portion of this asset did not change from its July Opinion to its September Opinion.

Wife also contends, however, that the trial court erred by amending its factual findings relative to the appreciation in value of the Annuity and determining such appreciation to be "market driven." Wife points out that although the trial court's July Opinion suggested that the 401(k) value appreciated due to the "active management" of

the parties, the subsequent September Opinion clarified that Wife's only participation in management of this asset was to meet with a financial advisor and concur in converting the 401(k) to the Annuity. The court then stated, "[a]side from that decision, all appreciation in [the Annuity] is market-driven." Again, although some inconsistency is apparent in these findings, we determine the findings to be irrelevant to the trial court's ultimate valuation of the marital portion of the Annuity.

We reiterate that the Annuity contained funds that were "rolled over" from Husband's employment-related 401(k). As such, we find applicable Tennessee Code Annotated § 36-4-121(b)(2)(B)(iii) (Supp. 2022),[3] which provides:

> The account balance, accrued benefit, or other value of vested and unvested pension benefits, vested and unvested stock option rights, retirement, and other fringe benefits accrued as a result of employment prior to the marriage, together with the appreciation of the value, shall be "separate property." In determining appreciation for purposes of this subdivision (b)(2)(B)(iii), the court shall utilize any reasonable method of accounting to attribute postmarital appreciation to the value of the premarital benefits, even though contributions have been made to the account or accounts during the marriage, and even though the contributions have appreciated in value during the marriage; provided, however, the contributions made during the marriage, if made as a result of employment during the marriage and the appreciation attributable to these contributions, would be "marital property." When determining appreciation pursuant to this subdivision (b)(2)(B)(iii), the concepts of commingling and transmutation shall not apply.

---

[3] Tennessee Code Annotated § 36-4-121(b)(2)(B)(iii) was amended in 2015 to add the current language. *See* 2015 Tenn. Pub. Acts, Ch. 202 § 1 (S.B. 161). Ergo, as this Court has recognized:

> Previously, it was the law that any gain to such a 401(k) account that accrued during the marriage would be deemed marital property. *See Snodgrass v. Snodgrass*, 295 S.W.3d 240, 255 (Tenn. 2009) ("[N]et gains from any source accruing in such accounts during a marriage are all marital property."); *Curry v. Curry*, No. M2007-02446-COA-R3-CV, 2008 WL 4426895, at *10 (Tenn. Ct. App. Sept. 18, 2008) ("[A]ny amount contributed during the marriage, and any increase in the value of the 401(k) that accrued during the marriage[,] is marital property."). Now, however, courts are directed by statute to identify gains in a 401(k) attributable to premarital separate property and those gains attributable to contributions made during the marriage.

*Erdman v. Erdman*, No. M2018-01668-COA-R3-CV, 2019 WL 6716305, at *3 (Tenn. Ct. App. Dec. 10, 2019). We therefore determine Husband's reliance on cases decided under the prior version of the statute to be misplaced.

Wife relies on a different statutory section, Tennessee Code Annotated § 36-4-121(b)(2)(B)(i), as support for her postulate that her alleged non-financial contributions to the appreciation in value of this asset would render the entire amount of appreciation that accrued during the marriage marital property. Tennessee Code Annotated § 36-4-121(b)(2)(B)(i) states: "'Marital property' includes income from, and any increase in the value during the marriage of, property determined to be separate property in accordance with subdivision (b)(4) if each party substantially contributed to its preservation and appreciation." However, Tennessee Code Annotated § 36-4-121(b)(2)(B)(iii) is the statutory subsection that is specific to premarital employment-related retirement benefits, and it contains no such provision concerning substantial contributions to preservation and appreciation. As such, the language of Tennessee Code Annotated § 36-4-121(b)(2)(B)(iii) is controlling here. *See Ray v. Madison Cnty., Tenn.*, 536 S.W.3d 824, 840 (Tenn. 2017) ("Where a conflict is presented between two statutes, a more specific statutory provision takes precedence over a more general provision.") (quoting *Lovlace v. Copley*, 418 S.W.3d 1, 20 (Tenn. 2013)).

Accordingly, following the direction of Tennessee Code Annotated § 36-4-121(b)(2)(B)(iii), trial courts should "utilize any reasonable method of accounting to attribute postmarital appreciation to the value of the premarital benefits" and should characterize the premarital value of an employment-related retirement benefit, "together with the appreciation of the value," as separate property. *See id.*; *see also Richardson v. Richardson*, No. E2019-02108-COA-R3-CV, 2020 WL 7343028, at *5 (Tenn. Ct. App. Dec. 14, 2020) ("Under the second provision (subsection (iii)), only if 'contributions [to the retirement accounts were] made during the marriage . . . as a result of employment during the marriage and the appreciation [is] attributable to these contributions' would the property be classified as 'marital property.'"). In this matter, the trial court did exactly that. Husband presented proof concerning the value of the post-marital contributions to the Annuity and any appreciation attributable thereto, and the trial court found this portion to be marital property. Wife's arguments concerning the trial court's valuation of the marital portion of the Annuity are therefore unavailing.[4]

Respecting the ultimate distribution of marital assets, Wife's issue concerning the trial court's reduction of Wife's portion of certain marital assets in its September Opinion presents a thornier question. The trial court noted in its September Opinion that Husband

---

[4] In her appellate brief, Wife also attempts to argue that the trial court erred by classifying <u>any</u> portion of the Annuity as separate property because it was "created during the marriage." However, "[p]roperty acquired prior to the final [divorce] hearing that is traceable to separate property constitutes separate property unless it has been gifted to the marital estate or has been transmuted into marital property through inextricable commingling with marital assets." *Church v. Church*, No. M2004-02702-COA-R3-CV, 2006 WL 2168271, at *7 (Tenn. Ct. App. Aug. 1, 2006). We reiterate that pursuant to Tennessee Code Annotated § 36-4-121(b)(2)(B)(iii) concerning premarital employment-related retirement benefits, "the concepts of commingling and transmutation shall not apply."

- 12 -

had challenged the trial court's marital property division, specifically mentioning the Annuity. The court stated:

> [Husband] challenges the division of the marital portion of the estate. It is his position the wife shall receive none of the marital portion of the Pacific Life Annuity and none of the SunTrust account number 9809. These are assets acquired during the marriage or transmuted to marital assets. While not stated in this way he asks she be awarded nothing. The Court acknowledges the import of the case of *Batson v. Batson*, 769 S.W.2d 849 MSCA (1988). The Court further finds that the division acknowledges the entanglement of the part[ies'] funds and financial and non-financial contributions. The situation has been created by [Husband's] manipulation of the finances such as attempting to create a favorable tax situation by manipulating the inheritance from his uncle and by removing monies from the marital account and placing them in his separate account. The parties cannot be placed back precisely in their pre-marital status. Additionally, [Husband] has benefited significantly from the appreciation of his 401k. The non-monetary contributions of [Wife] creating the lifestyle and image [Husband] desired have weight.
>
> All of the T.C.A.§ 36-4-121 factors are to be considered and no one should always carry more weight than the other. *Powell v. Powell*, 124 S.W.3d 100, 108 n.8 (Tenn. Ct. App. 2003) cited by *Bates v. Bates*, No. M2010-02590-COA-R3-CV, 2012 WL 2412447 (Tenn. Ct. App. June 26, 2012); *Howard v. Howard*, [No. E2014-01991-COA-R3-CV, 2015 WL 6551059 (Tenn. Ct. App. Oct. 29, 2015)].

Despite the above-quoted analysis, the court modified the division of marital assets "divided by percentage," which would include the Annuity, by increasing Husband's share to seventy percent and decreasing Wife's share to thirty percent. The trial court provided no further explanation for this change in its distribution of marital assets.

Wife asserts that there exists no reason for the trial court's decision to award Husband a ten percent greater share of the assets divided by percentage. Reviewing the trial court's September Opinion, we are likewise unable to discern the reason for this change. The court "acknowledge[d] the import of . . . *Batson*," a case wherein this Court explained that when "a marriage is short, the significance and value of a spouse's non-monetary contributions is diminished, and claims by one spouse to another spouse's separate property are minimal at best" and accordingly determined that the parties in that case should be restored to their premarital financial condition as much as possible. *See Batson v. Batson*, 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988). However, the trial court herein also stated in its analysis that these parties "cannot be placed back precisely in their pre-marital status" and further cited other factors it had previously considered in its

- 13 -

division of marital property. These factors included both parties' financial and non-financial contributions to the marital estate, Husband's commingling of separate and marital monies, his confiscation of funds upon filing for divorce, and the magnitude of his separate property holdings. The court also correctly declared that all of the factors contained in Tennessee Code Annotated § 36-4-121(c) should be considered.

As our Supreme Court has previously explained, we give "great weight to a trial court's decisions regarding the division of marital assets, and we will not disturb the trial court's ruling unless the distribution lacks proper evidentiary support, misapplies statutory requirements or procedures, or results in some error of law." *Snodgrass v. Snodgrass*, 295 S.W.3d 240, 245 (Tenn. 2009). Similarly, we review an order on a motion to alter or amend pursuant to an abuse of discretion standard. *See Townsend Sci. Tr. v. Food Tech. Inv'rs, L.P.*, No. W2005-00835-COA-R3-CV, 2006 WL 47433, at *2 (Tenn. Ct. App. Jan. 11, 2006). The abuse of discretion standard of review analyzes (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).

As this Court has previously elucidated, "in order to properly review a trial court's discretionary decision, we must be able to ascertain the factual basis of the decision." *State Farm Mut. Auto. Ins. Co. v. Jones*, No. M2016-02423-COA-R3-CV, 2017 WL 3446823, at *4 (Tenn. Ct. App. Aug. 11, 2017). In this case, however, we are unable to determine the factual basis for the trial court's decision to alter the percentages of certain marital assets awarded to each spouse. The facts recited in the trial court's September Opinion, which are reproduced above, were facts that the court had previously considered when fashioning its initial marital property distribution in the July Opinion. The trial court provided no additional explanation for its decision to increase Husband's share and reduce Wife's share of the assets divided by percentage. Accordingly, we are constrained to vacate the portion of the trial court's amended decree wherein the court altered the percentages awarded of specific assets and to remand this issue to the trial court for further findings, explanation, and determination. *See id.* at *5 (explaining that a lack of factual findings by the trial court rendered this Court "unable to determine the steps the court took to reach its ultimate conclusion").

## V. Wife's Remaining Issues

By reason of this unresolved issue concerning the trial court's marital property distribution, we likewise cannot address Wife's issues concerning the trial court's determinations with regard to spousal support and attorney's fees. As this Court has explained, "the dissolution of a marriage requires courts to engage in an 'orderly disentanglement' of the parties' affairs." *Erdman v. Erdman*, No. M2018-01668-COA-

R3-CV, 2019 WL 6716305, at *4 (Tenn. Ct. App. Dec. 10, 2019).  The *Erdman* Court further explained:

> The trial court's first task following the resolution of the [divorce] status issues is to identify and distribute the parties' separate property and then to divide their marital property in an equitable manner.  *See Batson v. Batson*, 769 S.W.2d 849, 856 (Tenn. Ct. App. 1988).  As part of this process, the trial court should also identify and allocate the parties' separate and marital debts.  *See Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996); *Hanover v. Hanover*, 775 S.W.2d 612, 614 (Tenn. Ct. App. 1989).  Sorting out the parties' property interests must precede support decisions because the manner in which the separate and marital property is divided can affect later support decisions.  *See* Tenn. Code Ann. § 36-5-101(d)(1)(G), -101(d)(1)(H) (Supp. 1997); Tenn. Comp. R. & Regs. r. 1240-2-4-.03(2) (1994); *Ridley v. Ridley*, No. 01A01-9012-CV-00462, at *5 (Tenn. Ct. App. May 10, 1991) (Koch, J., concurring) (No Tenn. R. App. P. 11 application filed).
>
> . . .
>
> Once a court has determined whether spousal support should be awarded, and if so its nature, amount, and duration, it should, as a final matter, address any request for attorney's fees if such request has been made.  Considering requests for attorney's fees in the context of the spousal support award is appropriate because additional awards for attorney's fees are considered a form of support.  *See Ford v. Ford*, 952 S.W.2d 824, 830 (Tenn. Ct. App. 1996); *Smith v. Smith*, 912 S.W.2d 155, 161 (Tenn. Ct. App. 1995).  However, as pointed out by the Tennessee Supreme Court, requests for attorney's fees should be considered only after the court has resolved the issues concerning the parties' property and support.  *See Inman v. Inman*, 811 S.W.2d 870, 874 (Tenn.1991).

*Id*. (quoting *Anderton v. Anderton*, 988 S.W.2d 675, 679 (Tenn. Ct. App. 1998)); *see Trezevant v. Trezevant*, 568 S.W.3d 595, 624 (Tenn. Ct. App. 2018) (vacating awards of alimony and attorney's fees due to an unsettled marital property distribution); *Kirby v. Kirby*, No. M2015-01408-COA-R3-CV, 2016 WL 4045035, at *9 (Tenn. Ct. App. July 25, 2016) (directing the trial court to reconsider its alimony award in light of vacation of the court's marital property distribution on appeal).

Inasmuch as the trial court's marital property distribution must be reevaluated on remand, we also vacate and remand the trial court's determinations regarding alimony and attorney's fees for reconsideration following the court's equitable division of marital property.  We acknowledge that Wife has also raised an issue with respect to whether she

is entitled to an award of her reasonable attorney's fees incurred on appeal, and we will address that issue in a subsequent section of this Opinion.

## VI. Husband's Issues Concerning Asset Valuation, Classification, and Distribution

Husband has set forth four issues for review on appeal. Three of those issues concern the trial court's valuation of the separate and marital portions of certain assets and the trial court's overall distribution of marital property. Husband's final issue requests an award of reasonable attorney's fees incurred on appeal. We will address each of these issues in turn.

## A. Marital Residence Proceeds

Husband asserts that he should be awarded $351,709.00 "off the top" of the proceeds from the sale of the marital residence in order to account for his separate property invested therein. Alternatively, Husband urges that he should receive 97.7% of the sales proceeds. The trial court determined that Husband's funds invested in the jointly owned marital residence had become marital property by transmutation. The court specifically found that "the parties treated the home as if it were marital by titling it in both names and making it a family home."

Husband advances the position that because the parties' marriage was of only eight years' duration, the parties should be restored to their premarital financial condition as much as possible. *See Batson*, 769 S.W.2d at 859. Specifically, Husband relies on the case of *Hunt-Carden v. Carden*, No. E2018-00175-COA-R3-CV, 2020 WL 1026263, at *1 (Tenn. Ct. App. Mar. 3, 2020), as support for his assertion that he should be awarded $351,709.00 from the proceeds of the sale of the marital residence as his separate property before any remaining proceeds are divided. However, upon our review of the factual circumstances present in *Hunt-Carden*, we determine it to be distinguishable and Husband's reliance thereon to be misplaced.

The parties in *Hunt-Carden* were married for two years when the wife filed for divorce. *See id.* Prior to their marriage, the couple located a home in which they wished to reside, and the husband purchased it, titling it in his name only. *Id.* The husband used $146,586.58 of his separate funds, obtained from an insurance settlement, as a down payment on the new home. *Id.* The couple then renovated and inhabited the home with the wife performing a good portion of the work. *Id.* Mortgage payments were paid from a joint account. *Id.*

At the time of the parties' divorce in *Hunt-Carden*, the trial court classified the home as marital, finding it to be a gift to the marital estate and awarding the wife approximately one-half of the equity in the home. *Id.* at *3. On appeal, this Court agreed with the trial court's classification of the home while finding that the husband should

- 16 -

receive $146,586.58 from the sale of the home as his separate property, in order to effectuate an equitable property division, and that the remaining proceeds should be shared equally by the parties. *Id*. at *8.

In contrast, the marital home in the case at bar was purchased during the parties' marriage and was titled in both parties' names. In addition, both parties contributed separate funds toward the purchase of the home and payment of the mortgage, although Husband's contribution was greater than Wife's.[5] Moreover, both parties contributed to maintaining the home and protecting its value in financial and non-financial ways. We therefore find the circumstances in the instant action to be distinguishable from those presented in *Hunt-Carden*.

As our Supreme Court has explained:

[S]eparate property becomes marital property [by commingling] if inextricably mingled with marital property or with the separate property of the other spouse. If the separate property continues to be segregated or can be traced into its product, commingling does not occur. . . . [Transmutation] occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property. . . . The rationale underlying these doctrines is that dealing with property in these ways creates a rebuttable presumption of a gift to the marital estate. This presumption is based also upon the provision in many marital property statutes that property acquired during the marriage is presumed to be marital. The presumption can be rebutted by evidence of circumstances or communications clearly indicating an intent that the property remain separate.

*Snodgrass*, 295 S.W.3d at 256 (quoting *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 747 (Tenn. 2002)). Here, the parties utilized funds from the sale of their prior jointly owned home to purchase their most recent marital home, which was purchased during the marriage and was also titled jointly. In addition, the parties used the home as their marital residence and both contributed to its maintenance and management. *See Liner v. Liner*, No. M2010-00582-COA-R3-CV, 2011 WL 1420883, at *2 (Tenn. Ct. App. Apr. 13, 2011) (discussing the above factors as significant to a finding of transmutation). As such, the parties created a rebuttable presumption of a gift to the marital estate, and Husband has presented no evidence of circumstances or communications clearly indicating his intent that his inherited funds invested in the marital home remain separate.

---

[5] We note that in addition to funds from Husband's inheritance that were utilized to pay down the balance of the mortgage on the marital residence, Husband also invested funds at the time of purchase of the marital residence that were derived from the sale of a home he had owned prior to the marriage. However, Husband acknowledged during trial that he had titled the prior home in both his and Wife's names after their marriage and that Wife had also invested premarital funds in the prior home.

- 17 -

We therefore affirm the trial court's determination that transmutation occurred and its classification of the marital residence and the equity therein as a marital asset.

With respect to the trial court's distribution of this marital asset, the trial court originally awarded Husband sixty percent and Wife forty percent of the proceeds from the sale of the marital residence. However, as previously explained, the trial court amended this distribution in its September Opinion to award Husband seventy percent and Wife thirty percent of the proceeds of this asset without sufficient findings and explanation. Therefore, any issue concerning the equitable distribution of the proceeds from the sale of the marital residence will need to be addressed by the trial court on remand.

## B. Husband's Inherited Funds

Husband similarly argues that the trial court erred in determining that $70,463.00 in funds Husband inherited had become marital property by virtue of commingling or transmutation. In his brief, Husband explains the calculation of this amount as follows:

- Mr. Stelzman testified that $460,463.00 from Husband's uncle's account was transferred to the parties' joint account on October 22, 2019, following his uncle's death.
- On October 29, 2019, Husband paid $110,000.00 toward the mortgage on the marital residence from the joint account.
- On the same day, Husband sent checks out of the joint account totaling $60,000.00 to his brother and sister-in-law, representing a partial distribution to his brother pursuant to his uncle's wishes.
- On November 7, 2019, just prior to filing this divorce action, Husband transferred the balance of the joint account to his individual SunTrust account, including the above-mentioned funds. He subsequently made disbursements of $110,000.00 each to his brother and another individual, representing their shares of the inherited funds. Accordingly, Husband contends that $70,463.00 in inherited funds remains in his SunTrust account and should be awarded to him as his separate property.

Respecting this issue, the trial court found in its July Opinion that after Husband transferred all monies from the parties' joint account to his individual SunTrust account, he continued to deposit marital funds into that account, such as his paychecks from employment and his short-term disability checks, and "handle[d] marital funds as if they were his alone while the wife was required to incur credit card debt to support herself." The court further determined that Husband's SunTrust account had been "commingled and transmuted from separate to marital property." As such, the court ordered that the balance in the SunTrust account was subject to equitable division as a marital asset and awarded Husband sixty percent and Wife forty percent of the balance.

Husband asserts that the trial court abused its discretion in determining the remaining inherited funds contained in Husband's SunTrust account to be a marital asset. However, we do not find that an abuse of discretion occurred. We reiterate that commingling occurs when separate property is "inextricably mingled with marital property." *Snodgrass*, 295 S.W.3d at 256. Here, Husband commingled inherited funds by placing those funds in a joint account that contained marital funds, *see Telfer v. Telfer*, No. M2012-00691-COA-R3-CV, 2013 WL 3379370, at *10 (Tenn. Ct. App. June 28, 2013), and also by placing marital funds into his individual account, *see Hofer v. Hofer*, No. 02A01-9510-CH-00210, 1997 WL 39503, at *3 (Tenn. Ct. App. Feb. 3, 1997).

The proof demonstrated that Husband opened his individual SunTrust account in mid-2019 and that he had his paychecks deposited therein beginning in July 2019. Husband acknowledged that when his uncle passed away in October 2019, he could have placed the inherited funds directly into his individual account rather than the parties' joint account, but he chose not to do so at that time. Husband later transferred the entire balance of the parties' joint account to his individual SunTrust account, including the remaining inherited funds as well as funds that were indisputably marital. As such, the trial court did not err in determining that the inherited funds had become marital property inasmuch as they were "inextricably mingled with marital property." *Snodgrass*, 295 S.W.3d at 256. We further find Husband's argument concerning alleged similarities between this matter and *Hunt-Carden* unavailing, as explained above.

With reference to the trial court's distribution of this asset, the trial court originally awarded Husband sixty percent and Wife forty percent of the balance of the SunTrust account. However, as previously explained, the trial court amended this distribution in its September Opinion to award Husband seventy percent and Wife thirty percent of the asset without sufficient explanation. Therefore, any issue concerning the equitable distribution of the proceeds from Husband's SunTrust account will also need to be addressed by the trial court on remand.

## VII. Attorney's Fees on Appeal

Both parties have requested an award of attorney's fees on appeal. As this Court has explained:

> In divorce proceedings, the recovery of attorney's fees by a litigant is provided for by statute which provides that a spouse seeking enforcement of an alimony or custody award in a decree may be granted attorney's fees in the discretion of the court before whom the action is pending. Tenn. Code. Ann. 36-5-103(c) (2003).

- 19 -

The discretion to award attorney's fees on appeal in a proceeding of this nature rests within the discretion of the Court. *Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995). When considering a request for attorney's fees on appeal, we also consider the requesting party's ability to pay such fees, the requesting party's success on appeal, whether the requesting party sought the appeal in good faith, and any other equitable factors relevant in a given case.

*Darvarmanesh v. Gharacholou*, No. M2004-00262-COA-R3-CV, 2005 WL 1684050, at *16 (Tenn. Ct. App. July 19, 2005).

In the present case, considering the outcome of this appeal, we decline to award attorney's fees on appeal to either party.

## VIII. Conclusion

For the foregoing reasons, we affirm the trial court's determinations concerning valuation and classification of the parties' assets. We vacate the portion of the trial court's amended decree wherein the court altered the percentages awarded to each party, and we remand this issue to the trial court for further findings, explanation, and determination. By reason of this unresolved issue concerning the trial court's marital property distribution, we likewise vacate and remand the trial court's determinations regarding alimony and attorney's fees for reconsideration following the trial court's equitable division of marital property. The trial court's amended final decree is affirmed in all other respects. The parties' respective requests for attorney's fees on appeal are denied. This case is remanded to the trial court for further proceedings consistent with this Opinion. Costs on appeal are assessed one-half to Husband, Timothy Charles Cooke, and one-half to Wife, Rita Moses Cooke.

s/Thomas R. Frierson, II

_____
THOMAS R. FRIERSON, II, JUDGE